# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

02 AUG 30  AM II: 24

U.S. DISTRICT COURT
N.D. OF ALABAMA

**ENTERED**

AUG 30 2002

| | | |
|---|---|---|
| MARY EVANS, and all individuals<br>similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 01-JEO-0566-S |
| | ) | |
| SCI SYSTEMS (ALABAMA), INC.; | ) | |
| BLUE CROSS AND BLUE SHIELD OF | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case is before the court on the motions for summary judgment filed by Defendant SCI Systems (Alabama), Inc., (doc. 26) and Defendant Blue Cross and Blue Shield of Alabama (doc. 23) -- as well as the plaintiff's motions to strike the affidavit of Kay Headrick (doc. 35) and the declaration and supplemental declarations of Martha Ann Turnage (doc. 36, 45, & 50), and the defendants' motions to strike the plaintiff's evidentiary submissions (doc. 37 & 41).  For the reasons set forth below, the defendants' motions for summary judgment (doc. 23 & 26) are due to be granted; the defendants' motions to strike the plaintiff's evidentiary submissions (doc. 37 & 41) are due to be denied; and the plaintiff's motion to strike the affidavit of Kay Headrick (doc. 35) is due to be granted in part and denied in part; and the plaintiff's motions to strike the declarations of Martha Ann Turnage (doc. 36, 45, & 50) are to be denied.

### SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the

*51*

moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### FACTS[1]

The plaintiff, Mary Evans, began working for the defendant, SCI Systems (Alabama) (hereinafter "Defendant SCI") on November 2, 1987. At all times relevant, Defendant SCI employed the plaintiff and she participated in its Employees Group Health Care Plan. Defendant

---

[1] The facts, as set forth below, "are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998)(citing *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)).

Blue Cross and Blue Shield of Alabama (hereinafter "Defendant Blue Cross") is the administrator of the plan. The plan is self-insured and is administered by Defendant Blue Cross on a cost-plus basis.

In 1997, the plaintiff's doctor removed her fallopian tubes for medically necessary reasons. As a result of this surgery, she was unable to conceive and carry a child to term. The plaintiff attempted to become pregnant using assisted reproductive technology ("ART"), specifically in vitro fertilization. She conceived a child using this method, but later suffered a miscarriage. The plan does not cover ART, and the plaintiff paid for such treatments.

The plan defines ART services as "any process of taking human eggs or sperm or both and putting them into a medium or the body to cause reproduction. Examples of ART include in vitro fertilization and gamete intrafallopian transfer." (Doc. 33, Ex. 4, p. 28). In addition to excluding ART services, the plan excludes:

- Services or expenses that are not medically necessary
- Services or expenses for cosmetic surgery
- Services or expenses for filling or extracting teeth or increasing periodontium and/or dental implants and/or temporomandibular (TMJ) disorders
- Services or expenses for custodial care
- Investigative treatments or procedures
- Services or expenses for routine foot care
- In-patient rehabilitation services or other services that could have been provided on an outpatient basis
- Services or expenses for or related to sexual dysfunctions or inadequacies not related to organic disease or which are related to surgical sex transformations
- Services or expenses for pregnancy or any dependant other than the employee's wife
- Services or expenses for an accident or illness resulting from war, or any act of war, declared or undeclared, or from riot or civil commotion
- Services or expenses for treatment during imprisonment or for any injury sustained in the commission of a crime

3

- Services or expenses for weight loss
- Services or expenses for organ transplant
- Eyeglasses, contact lenses, or hearing aids
- Services or expenses for personal hygiene, comfort, or convenience items such as air-conditioners, humidifiers, whirlpool baths, and physical fitness or exercise apparel
- Services or expenses for speech, occupational, recreational, or educational therapy
- Services or expenses for eye surgery designed to improve vision
- Services or expenses for acupuncture and biofeedback
- Services or expenses for treatments to stop smoking
- Travel

(*Id.* at 23-30).

Although the plan excludes ART services, it covers other treatments offered for infertility, such as hormone therapy and some corrective surgery.  Moreover, the plan covers prescriptions for Viagra and certain birth control measures, such as vasectomies and oral contraceptives.

On May 24, 1999, the plaintiff applied to Defendant SCI to cover another in vitro fertilization procedure.  The defendants denied her request, stating that the procedure was not covered by the plan.  Thereafter, the plaintiff requested that Defendant SCI expand her medical coverage for infertility.  Defendant SCI denied her request on June 8, 1999, stating that if the benefits were expanded, the cost to plan would be "nearly $400,000" for the entire group that would be covered.  (Doc. 33, Ex. 7).

On September 3, 1999, the plaintiff contacted the EEOC regarding her concerns of discrimination based on the denial of insurance coverage for ART services.  (Doc. 33, Ex. 8).  Approximately two months later, on November 4, 1999, she filed a charge of discrimination against Defendant SCI.  (Doc. 34, Ex. 6).  In her charge, the plaintiff alleged that Defendant SCI

4

had discriminated against her on the basis of her sex and disability by refusing to cover ART

services on May 24, 1999.  (*Id.*).

On or about January 11, 2000, the plaintiff filed a charge of discrimination against

Defendant Blue Cross (doc. 33, ex. 9); she amended this charge on February 8, 2000, to allege

that Defendant Blue Cross, as the insurance carrier, discriminated against her on the basis of her

sex and disability by denying her claim for ART services on May 24, 1999 (doc. 33, ex. 10).

The EEOC issued a determination on both charges.  In the determination letters, which

are substantially identical, the EEOC's District Director, wrote:

> Based on the evidence obtained during the investigation, I have determined that
> Respondent's exclusion of medically necessary treatments for women suffering
> from the disability of infertility, as contained in Respondent's Health Benefits
> Plan, violated the Americans with Disabilities Act, Title VII of the Civil Rights
> Act of 1964, as amended, and the Pregnancy Discrimination Act . . . .

(Doc. 1, Ex. 3).  After conciliation efforts failed (*see id.*, ex. 4), the plaintiff filed this instant

action.  In her complaint, she alleges disparate treatment and disparate impact premised upon her

sex, in violation of Title VII (Counts I & IV),[2] a violation of the Americans with Disabilities Act

("ADA") (Count II), a violation of the Pregnancy Discrimination Act ("PDA")(Count III), against

Defendant SCI.  (Doc. 1).  She only alleges a disability discrimination claim against Defendant

Blue Cross under the ADA.  (Count IV).  (*Id.* at 13-15).

### DISCUSSION

As just noted, the plaintiff alleges that the failure of her employee health plan to provide

coverage for ART services constitutes discrimination on the basis of her sex and pregnancy, in

violation of Title VII, and discrimination on the basis of disability in violation of Title I and Title

---

[2] The latter claim is erroneously cast as "Count IV."  (Doc. 1 at 15).  In fact, it is "Count V."

III of the ADA. The defendants have moved for summary judgment, arguing that the plaintiff's claims are due to be dismissed on numerous grounds. (Doc. 23 & 26). Also, the parties have filed motions to strike evidence submitted in this case: the plaintiff's motion to strike the affidavit of Kay Headrick (doc. 35); the plaintiff's motions to strike the declaration and supplemental declarations of Martha Ann Turnage (doc. 36, 45, & 50); and the defendants' motions to strike the plaintiff's evidentiary submissions (doc. 37 & 41).

**Defendants' Motions to Strike**

The defendants have moved to strike the plaintiff's evidentiary submissions on the ground that they are not properly authenticated. (Doc. 37 & 41). "In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form." *Denney v. City of Albany*, 247 F.3d 1172, 1190 n.10 (11th Cir. 2001) (*citing Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996)); *see McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (otherwise admissible evidence may be submitted in an inadmissible form at the summary judgment stage).

The plaintiff's evidentiary submission consists of medical records (doc. 33, ex. 1 & 2; doc. 34, ex. 1 & 2); plan documents (doc. 33, ex. 3-5; doc. 34, ex. 3-5); EEOC documents (doc. 33, ex. 6, 8-10; doc. 34, ex. 6 & 8); and a letter from Defendant SCI to the plaintiff. Although the defendants are correct that the plaintiff has not properly authenticated these documents, the court has reviewed the plaintiff's evidentiary submissions and finds that the documents are otherwise admissible and could be reduced to an admissible form at trial. Therefore, the defendants' motions to strike the plaintiff's evidentiary submissions are due to be denied.

6

### Plaintiff's Motions to Strike

"The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion." *Lee v. National Life Assur. Co. of Canada*, 632 F.2d 524, 529 (5th Cir. 1980) (citations omitted).

### Affidavit of Kay Headrick

The plaintiff has filed a motion to strike the affidavit of Kay Headrick, Defendant SCI's Administrator of Employee Benefits. (Doc. 35). Specifically, the plaintiff seeks to strike paragraphs 5, 6, 8, and 10 of Headrick's affidavit on the ground that her statements therein are not based on personal knowledge, are hearsay, and/or are conclusory.

Paragraph 5 of Headrick's affidavit states her "understanding" that ART services are "by no means a 'cure' for infertility. (Doc. 35, p. 2, *citing* doc. 27, ex. A, ¶ 5). To the extent this statement appears to be based on her understanding rather than her personal knowledge, the statement is due to be struck. The remainder of the paragraph to the extent it details her personal knowledge as an administrator is admissible and relevant to establish Defendant SCI's intent in excluding such services from coverage under the plan. Therefore, the plaintiff's motion to strike this portion of the paragraph is due to be denied. Nevertheless, the court has not considered these statements as they are not material to the court's decision on the defendants' motions for summary judgment.

The plaintiff seeks to strike a portion of paragraph 6 of Headrick's affidavit, which states that Defendant Blue Cross advised Defendant SCI that the cost of covering SCI's employees

would be "as much as $4 million annually." (Doc. 35, p. 4, *citing* doc. 27, ex. A, ¶ 6). The plaintiff contends that such cost figures are not based on Headrick's personal knowledge and the statement is inadmissible hearsay. The court agrees that the statement is hearsay; however, it could be reduced to an admissible form. *See McMillian*, 88 F.3d at 1584. Therefore, the plaintiff's motion to strike this paragraph is due to be denied. Nevertheless, the court again has not considered these statements as they are not material to the court's decision on the defendants' motions for summary judgment.

Paragraph 8 states that the exclusion of ART services "affects male and female employees in a gender-neutral way." (Doc. 35 at p. 5, *citing* doc. 27, ex. A, ¶ 8). Headrick also states, "Specifically, the procedures covered by the exclusion involve removal of both sperm and human eggs from the male and female participants and implanting the egg after fertilization is attempted." (*Id.*). The plaintiff asks the court to strike this paragraph on the grounds that it is conclusory and that "[t]here is no indication of [Headrick's] qualification to speak to the procedure or procedures involved in ART." (Doc. 35, ¶ 16). The court finds that Headrick's statement is not conclusory; rather, the statement is a reflection of Headrick's experience as the employee benefits administrator for Defendant SCI and the plain language of the plan. The court agrees that Headrick's affidavit does not indicate that she is qualified to explain ART procedures; however, her statement reflects the terms of the ART exclusion in policy, not the mechanics of ART. Therefore, the court finds that the plaintiff's motion to strike is due to be denied. Nevertheless, the court once again has not considered these statements as they are not material to the court's decision on the defendants' motions for summary judgment.

Headrick states, in paragraph 10, that the plan "provides coverage for most common treatments for infertility," and she lists various medical procedures covered by the plan and related to treating infertility. (Doc. 27, Ex. A, ¶ 10). The plaintiff contends that the statement is conclusory and vague. (Doc. 35, pp. 5-6). The court agrees that the use of the word "most" is conclusory; however, the basis of Headrick's conclusion is evident from the affidavit. The court interprets Headrick's statement to mean that the plan covers the majority of the common treatments for infertility, which she defines in her statement as "medical advice and counseling . . . , various examinations and testing, corrective medications and hormone treatments, and a variety of surgical procedures." (Doc. 27, Ex. A, ¶ 10). This statement is obviously within Headrick's personal experience with the plan. Therefore, the plaintiff's motion to strike is due to be denied as to this claim.

### Declaration of Martha Ann Turnage

The plaintiff has filed a motion asking the court to strike the declaration of Martha Ann Turnage, a medical policy analyst for Defendant Blue Cross. (Doc. 36). Specifically, the plaintiff seeks to strike the last sentence of paragraph 4 and all of paragraph 10 of Turnage's declaration. (*Id.*).

The last sentence of paragraph 4 of Turnage's declaration states, "ART procedures are by no means a 'cure' for infertility." (Doc. 27, Ex. B, ¶ 4). The plaintiff contends that this statement is a conclusion and that the declaration does indicate Turnage's qualifications to make such a claim. (Doc. 36, ¶ 8). The court agrees that Turnage's statement is conclusory; however, it is a conclusion drawn from the definition of ART services. Therefore, the plaintiff's motion to strike is due to be denied. The court notes, however, that whether ART services "cure" infertility

is not material to the court's determination of the defendants' motions for summary judgment and has not been considered by the court.

The plaintiff objects to paragraph 10 of Turnage's declaration -- which states the failure rate of in vitro fertilization, the costs of such treatments, the financial viability of providing coverage for such treatments, and Defendant SCI's reason for not providing such coverage -- on the grounds that these statements are hearsay, conclusory, and not relevant. (Doc. 36 at 2-4). The court finds that the statement is not hearsay. In her capacity as an employee of Defendant Blue Cross, Turnage had first-hand knowledge of the coverage provided by the plan. Moreover, Turnage filed a supplemental declaration setting forth the basis for her statements regarding the failure rate of in vitro fertilization and the costs of such procedures. The court finds this evidence sufficient to support her declaration. Therefore, the plaintiff's motion to strike paragraph 10 of Turnage's declaration is due to be denied. The court notes, however, that Turnage's statements regarding the failure rate of in vitro fertilization, the costs of the treatments, and the financial viability of the plan providing such treatments are not material to the court's determination of the defendants' motions for summary judgment and have not been considered by the court.

### Supplemental Declaration of Martha Ann Turnage

Defendant Blue Cross filed Turnage's first supplemental declaration on November 28, 2001. (Doc. 39). In this declaration, Turnage set forth the basis for her opinions regarding the failure rate for in vitro fertilization and the cost of such procedures. The plaintiff filed a motion to strike (doc. 45) on various grounds related to Turnage's statements regarding the failure rate of in vitro fertilization and the cost of such procedures. The court finds that Turnage's statements

10

regarding the failure rate of in vitro fertilization and costs of such procedures are properly

supported.  However, as stated above, the failure rate and costs of in vitro fertilization are not

material to the determination of the defendants' motions for summary judgment and have not

been considered by the court.  Moreover, even if such facts were material, they are only relevant

as to the defendants' perception of the failure rate and costs, which may support or rebut any

inference of discriminatory intent.

The plaintiff also moves to strike the supplemental affidavit on the ground that it contains

new evidence, submitted after the time set for the submission of the plaintiff's evidence in

opposition to the defendants' motions.  The court finds that the plaintiff has suffered no prejudice

by the timing of the admission of this evidence.  As stated above, the failure rate of in vitro

fertilization and the cost of such procedures is not material to the determination of the

defendants' motions for summary judgment.  Also, the additional evidence was submitted in

response to the plaintiff's motion to strike Turnage's first declaration, which contained the same

assertions regarding failure rates and costs.  Therefore, the assertion of such facts is not a surprise

and they are not "new."  Accordingly, the court finds that the first supplemental declaration is

admissible for purposes of summary judgment and that the plaintiff's motion to strike (doc. 45) is

due to be denied.

### Second Supplemental Declaration of Martha Ann Turnage

On February 4, 2002, this court granted Defendant Blue Cross's motion to file Turnage's

second supplemental declaration.  Thus, the plaintiff's motion to strike is due to be denied as

moot.  However, the court notes one ground raised by the plaintiff that deserves mention.  The

plaintiff contends that the defendants' argument – that the plan falls within the safe harbor

11

provision of the ADA because the plan was in existence prior to the passage of the ADA – was not raised in the defendants' initial briefs in support of their motions for summary judgment. This contention is not correct. Defendant Blue Cross's brief states, "The plan in the instant case was adopted on January 1, 1982, and the ART exclusion was incorporated into the plan years before the enactment of the ADA. Because the ART exclusion was implemented by SCI long before the effective date of the ADA, it cannot be a subterfuge to evade the purposes of the ADA." (Doc. 24, pp. 24-25). Likewise, Defendant SCI raised a similar argument in its initial brief, which states, "[A]n insurance plan which (like SCI's) was adopted before the ADA was passed cannot be a subterfuge to evade the ADA and thus cannot be held to violate the ADA." (Doc. 28, p. 19). The plaintiff's contention that she has been unfairly surprised by the "new" issue is without merit. The plaintiff's motion to strike Turnage's second supplemental declaration (doc. 50) is due to be denied.

For the reasons set forth above, the defendants' motions to strike (doc. 37 & 41) and the plaintiff's motions to strike (doc. 35, 36, 45, & 50) are due to be denied.

### Defendants' Motions for Summary Judgment

The defendants contend that they are entitled to summary judgment as to the plaintiff's claims based on the ART exclusion in the plan. Specifically, the defendants' contend that the plaintiff failed to timely file a charge of discrimination with the EEOC, as required by Title VII and Title I of the ADA; that the plaintiff cannot show that the exclusion of ART services is discriminatory; and that the defendants are protected from liability arising from the terms of the plan, a bona fide benefit plan, by the safe-harbor provision of the ADA.

12

## Charge-Filing Requirement

Both defendants contend that the plaintiff's employment discrimination claims[3] are time-barred because she did not file an EEOC charge within 180 days of the alleged unlawful employment action.[4] The plaintiff argues two events are at issue in this case: the denial of coverage on May 24, 1999, and a letter refusing to expand coverage to include ART services, dated June 3, 1999. However, the court finds that the subsequent refusal to expand benefits is analogous to an employer's "refusal to undo a prior discriminatory act," which "is not, in itself, a new act of discrimination." *Stewart v. Booker T. Washington Insurance*, 232 F.3d 844, 853 (11th Cir. 2001) (*citing Everett v. Cobb County School District*, 138 F.3d 1407 (11th Cir. 1998) (*citing Lever v. Northwestern University*, 979 F.2d 552, 556 (7th Cir. 1992))). Therefore, the denial of the plaintiff's request to expand her coverage is not a new act of discrimination.

Therefore, the plaintiff had 180 days to file a valid charge from the last occurrence of the allegedly discriminatory act – the May 24, 1999 claim denial – or before November 20, 1999. The plaintiff's EEOC charge, filed on or about November 4, 1999, is timely as to Defendant SCI, the entity named in the charge.[5] The plaintiff did not file a charge against Defendant Blue Cross

---

[3] Plaintiff's employment discrimination claims are her Title VII claims, her PDA claims, and her Title I ADA claims. Title III of the ADA, which prohibits discrimination by a private entity in public accommodations, is not limited to employment discrimination and does not require an employment relationship between the plaintiff and the defendant. "A plaintiff in a private Title III action is not required to provide notice to [the EEOC] as a prerequisite to filing suit." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).

[4] Under Title VII, 42 U.S.C. 2000e-5(e)(1), and Title I of the ADA, 42 U.S.C. § 12117(a), a plaintiff is required to file a charge of discrimination within 180 days of the alleged adverse employment action.

[5] The court notes that the plaintiff does not contend that the November EEOC charge was sufficient to satisfy the filing requirement as to her claims against Defendant Blue Cross. ((Doc. 32, pp. 6-8); *see also Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1358-59 (11th Cir. 1994) ("Where the purposes of the Act are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts."). Because the plaintiff has not argued that the November 4, 1999, EEOC charge should be sufficient to satisfy the charge-filing requirement against Defendant Blue Cross, the court pretermits discussion of whether the evidence before the court is sufficient

until January 2000, which is more than 180 days after she was denied coverage for ART services. Therefore, the charge of discrimination against Defendant Blue Cross was not timely filed. *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994) ("a party not named in the EEOC charge cannot be sued in a subsequent civil action"). The plaintiff's employment discrimination claims against Defendant Blue Cross are due to be dismissed because the plaintiff failed to timely file a charge of discrimination against Defendant Blue Cross.

Defendant SCI contends that the clock should start to run when the plaintiff was aware of the exclusion of ART benefits, February 1998, the first time she was denied coverage for ART services. The court finds this argument is without merit. The Supreme Court recently reiterated the basic principles of a continuing violation; it held:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. **The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed**. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*National R.R. Passenger Corp. v. Morgan*, ___ U.S. ___, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002) (emphasis added). The court finds that each denial of benefits was a discrete act of alleged discrimination. Therefore, a new clock started when the plaintiff was denied benefits on May 24, 1999.

_____

to support such a finding.

## SEX DISCRIMINATION CLAIMS

The plaintiff contends that the non-coverage of ART services constitutes sex discrimination because "[t]he excluded treatments at issue are all treatments performed exclusively on women," and "there are no similar exclusions for treatments performed solely on men." (Doc. 31, p. 9). However, the plaintiff's argument is not supported by the law or the facts of this case.

The plan at issue provides the following exclusion:

Services or expenses for or related to Assisted Reproductive Technology (ART). ART is any process of taking human eggs or sperm or both and putting them into a medium or the body to try to cause reproduction. Examples of ART are in vitro fertilization and gamete intrafallopian transfer.

(Doc. 34, Ex. 4, p. 28 at ¶ 25). The plain language of the policy applies to all covered employees – men and women. While the court agrees that women are the only known vessels of human reproduction, men contribute to the process, and the policy does not cover the cost of the male contribution to ART processes. Moreover, nothing in the policy suggests that male employees could receive dependent coverage for ART services for their spouses. Simply put, nothing in the evidence indicates that the exclusion of ART services does not apply equally to men and women. Therefore, the plan is not discriminatory on its face.

Because the plaintiff has asserted a disparate treatment claim based on Defendant SCI's failure to provide insurance coverage for ART services, she must establish that Defendant SCI intended to discriminate against women.[6] The plaintiff may establish this intent by

---

[6] "A plaintiff alleging a claim of disparate treatment must establish that the employer intended to discriminate against the protected group. If direct evidence of discriminatory intent is not available, a plaintiff may present circumstantial evidence from which an inference of intentional discrimination may be drawn. The first step in a claim of disparate treatment, based on a theory of 'pretext' and supported by circumstantial evidence, is for the plaintiff to establish a *prima facie* case which creates a rebuttable presumption of unlawful discrimination. The

15

demonstrating that she was treated less favorably than similarly-situated male employees. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 1002, 108 S. Ct. 2777, 2793, 101 L. Ed. 2d 827 (1988) ("The violation alleged in a disparate-treatment challenge focuses exclusively on the intent of the employer. . . . Unless it is proved that an employer intended to disfavor the plaintiff because of his membership in a protected class, a disparate-treatment claim fails.") (citations omitted); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981) ("*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("To establish a prima facie case of racial discrimination, a plaintiff must show . . . his employer treated similarly situated employees outside his classification more favorably . . . .").

The plaintiff contends that she received less comprehensive coverage than offered male employees because the policy covers the prescription drug Viagra, which "assist[s] male employees in reproduction." (Doc. 31, p. 10). The court finds that male employees who receive insurance coverage for the prescription drug Viagra are not similarly situated to the plaintiff, who was denied insurance coverage for ART services. The court notes that the record shows that plaintiff received insurance coverage for some medical treatments related to her infertility; the record does not demonstrate that any male employee, or spouse of a male employee, received insurance coverage for ART services. Indeed, the record shows that male and female employees, and their spouses, are treated equally for purposes of coverage of ART services. Thus, the

---

defendant may rebut this presumption, if made, by articulating a nondiscriminatory reason for its actions. To prevail, the plaintiff must show that the nondiscriminatory reason offered by the defendant is a pretext for discrimination." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313-14 (11th Cir. 1994).

plaintiff has not established that Defendant SCI discriminated against her because she has failed

to demonstrate that she was "disfavored" as compared to male employees. *See Saks v. Franklin*

*Covey Co.*, 117 F. Supp. 2d 318, 328 (S.D. N.Y. 2000). Therefore, the court finds that Defendant

SCI is entitled to summary judgment as to the plaintiff's Title VII sex discrimination claim.

## PREGNANCY DISCRIMINATION

The plaintiff contends that Defendant SCI's plan violates the Pregnancy Discrimination

Act ("PDA") because infertility is a pregnancy-related condition covered by the PDA and

because the plan "treats a woman's infertility . . . differently than [a] male['s] infertility." (Doc.

31, p. 12). The plaintiff contends that infertility is a pregnancy-related condition that is covered

by the PDA.

The PDA provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to,
> because of or on the basis of pregnancy, childbirth, or related medical conditions;
> and women affected by pregnancy, childbirth, or related medical conditions shall
> be treated the same for all employment-related purposes, including receipt of
> benefits under fringe benefit programs, as other persons not so affected but similar
> in their ability or inability to work . . . .

42 U.S.C. § 2000e(k). In *Krauel v. Iowa Methodist Medical Center*, 95 F.3d 674 (8th Cir. 1996),

the Eighth Circuit Court of Appeals held that infertility is not a pregnancy-related medical

condition. It held:

> Under general rules of statutory construction, "when a general term follows a
> specific one, the general term should be understood as a reference to subjects akin
> to the one with specific enumeration." *Norfolk & W. Ry. v. American Train
> Dispatchers Ass'n*, 499 U.S. 117, 129, 111 S. Ct. 1156, 1163, 113 L. Ed. 2d 95
> (1991). "Related medical conditions," a general phrase, . . . should be understood
> as referring to conditions related to "pregnancy" and "childbirth," specific terms,
> unless the context of the PDA dictates otherwise. The plain language of the PDA
> does not suggest that "related medical conditions" should be extended to apply

17

outside the context of "pregnancy" and "childbirth." Pregnancy and childbirth, which occur after conception, are strikingly different from infertility, which prevents conception.

*Krauel*, 95 F.3d at 679;[7] *see also LaPorta v. Wal-Mart Stores, Inc.*, 163 F. Supp. 2d 758, 770-71 (W.D. Mich. 2001).

This court finds the analysis of *Krauel* to be persuasive. The court notes that the purpose of the PDA is to prevent sex discrimination on the basis of pregnancy and/or childbirth – conditions that affect only women. The statute does not provide protected status for parents in general. The capacity to reproduce (fertility) and the incapacity to reproduce (infertility) are not sex-specific; men and women can be fertile or infertile. However, pregnancy and childbirth are sex-specific; only women can be pregnant or give birth. Therefore, the court finds that the plaintiff claims based on the PDA are due to be dismissed.

However, even if fertility or infertility are pregnancy-related medical conditions, the plaintiff has failed to show that non-coverage of ART services is discriminatory. The plaintiff asserts, "SCI's plan violates the [PDA] because it treats a woman's infertility . . . differently than

---

[7] The court is not unmindful that not every court has agreed with this analysis. For example, in *Saks*, the district court held that infertility was a medical condition related to pregnancy. *Saks*, 117 F. Supp. 2d at 328 (*citing International Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 198-99, 111 S. Ct. 1196, 1203, 113 L. Ed. 2d 158 (1991)(discrimination on the basis of "potential pregnancy" violated the PDA)). However, this court notes that "potential pregnancy," referred to in *Johnson Controls*, is a condition affecting only women and the Supreme Court recognized that "[w]ith the PDA, Congress made clear that the decision to become pregnant or to work while being either pregnant or capable of becoming pregnant was reserved for each individual ***woman*** to make for herself." *Johnson Controls*, 499 U.S. at 206, 111 S. Ct. at 1207 (emphasis added). Clearly, the PDA protects against discrimination on the basis of pregnancy and childbirth, conditions experienced only by women. Indeed, the Court's opinion implicitly finds that classification on the basis of fertility – as opposed to childbearing capacity – would not violate Title VII. *Id.* at 198, 111 S. Ct. at 1203 ("Johnson Controls' policy classifies on the basis of gender and childbearing capacity, rather than fertility alone. . . . Despite evidence in the record about the debilitating effect of lead exposure on the male reproductive system, Johnson Controls is concerned only with the harms that may befall the unborn offspring of its female employees.").

male infertility." This assertion is not supported by the record. Defendant SCI offers the same

insurance to its employees – "pregnant, potentially pregnant, and not pregnant." *Saks*, 117

F. Supp. 2d at 329. As set forth above, the court finds that the plaintiff has not shown that she

was disfavored as compared to fertile employees.

Thus, the plaintiff's claims based on the PDA are due to be dismissed, not only because

infertility is not a "medical condition" related to pregnancy and/or childbirth, but also because

she has not produced any evidence that she has been discriminated against on the basis of her

infertility by Defendant SCI's non-coverage of ART services. Defendant SCI's motion for

summary judgment is due to be granted as to the plaintiff's PDA claims and such claims are due

to be dismissed.

## DISABILITY DISCRIMINATION

The defendants contend that they are entitled to a summary judgment as to the plaintiff's

Title I and Title III ADA claims based on the "safe-harbor" provisions of 42 U.S.C. § 12201(c),

which state:

> Subchapters I through III of this chapter and Title IV of this Act shall not be
> construed to prohibit or restrict –
>
> . . .
>
> (3) a person or organization covered by this chapter from establishing,
> sponsoring, observing, or administering the terms of a bona fide benefit plan that
> is not subject to State laws that regulate insurance.
>
> Paragraphs (1), (2), and (3) shall not be used as a subterfuge to evade the purposes
> of subchapter [sic] I and III of this chapter.

42 U.S.C. § 12201(c). The plaintiff argues that the defendants are not entitled to the safe-harbor

defense because they have "not presented any actuarial, statistical, and empirical data to

19

demonstrate that its benefits decision was based on lawful risk assessment." (Doc. 32, p. 13

(*citing Zamora-Quezada v. Health Texas Medical Group of San Antonio*, 34 F. Supp. 2d 433,

444 (W.D. Tex. 1998); Doc. 31, pp. 16-17 (*citing Zamora-Quezada,* 34 F. Supp. 2d at 444)).

> The *Zamora-Quezada* court, on a motion to dismiss, held:
>
> Presuming the safe harbor provision is applicable, to prevail at this juncture [the defendant] would have to establish a bona fide benefit plan engaged in lawful risk assessment and show their decisions were not a subterfuge for discrimination. The record, however, does not contain the actuarial, statistical, and empirical data used in making all of its payment decisions and utilization decisions for the individual treatment decisions of the individual patients. The . . . defendants' affirmative defense argument they are insulated from liability and protected from further proceedings in this case by the safe harbor provision of the ADA is denied.

*Zamora-Quezada*, 34 F. Supp. 2d at 444. The *Zamora-Quezada* court did not cite any legal

authority for its holding.

This court has found no legal authority to support a requirement that the

defendant-insurer must produce actuarial justification for its decision to deny coverage in order

to avail itself of the safe-harbor defense. Indeed, the vast weight of authority supports a holding

that the defendant-insurer need not demonstrate that the plan is actuarially justified; it must show

only that the plan is "bona fide in that it exists and pays benefits"[8] and that it is either compatible

with state law (§ 12201(c)(1)) or that it is exempt from state law (§ 12201(c)(3)). *See Aramark*,

208 F.3d at 271-72 (*citing Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 105

(2d Cir. 1999); *Rogers v. Department of Health and Envtl. Control*, 174 F.3d 431, 437 (4th Cir.

1999); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 611-12 (3rd Cir. 1998), *cert. denied*, 525

---

[8]*E.E.O.C. v. Aramark Corp., Inc.*, 208 F.3d 266, 269 (D.C. Cir. 2000)(quoting *Public Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 166, 109 S. Ct. 2854, 2860, 106 L. Ed. 2d 134 (1989)).

U.S. 1093, 119 S. Ct. 850, 142 L. Ed. 2d 704 (1999); *Parker v. Metropolitan Life Ins. Co.*, 121

F.3d 1006, 1012 n.5 (6th Cir. 1997)(en banc), *cert. denied*, 522 U.S. 1084, 118 S. Ct. 871, 139

L. Ed. 2d 768 (1998); *Krauel*, 95 F.3d at 678-79).

The plaintiff does not dispute that the plan is bona fide or that it is exempt from state law

as a qualified ERISA plan. Therefore, the burden shifts to the plaintiff to establish that the plan

was a subterfuge. The Eleventh Circuit, following the weight of authority from other circuits,

has held the plaintiff must establish a specific intent to discriminate in order to establish the plan

is a "subterfuge" and, thus, avoid the safe-harbor provision. *Johnson v. K Mart Corp.*, 273 F.3d

1035, 1058-59 (11th Cir. 2001) (*rehearing en banc granted, opinion vacated*) (*citing Aramark*,

208 F.3d at 271; *Fitts v. Federal National Mortgage Association*, 236 F.3d 1, 3-4 (D.C. Cir.

2001); *Ford*, 145 F.3d at 611; *Leonard F.*, 199 F.3d at 105).

This court notes that the Eleventh Circuit vacated its opinion on rehearing and

subsequently stayed further proceedings pending K Mart's bankruptcy.[9] Therefore, its opinion in

*Johnson* is not binding on this court. *See County of Los Angeles v. Davis*, 440 U.S. 625, 634

n.6, 99 S. Ct. 1379, 1384 n.6, 59 L. Ed. 2d 642 (1979). However, the holding of the opinion --

that a plaintiff must show an intent to discriminate in order to prove subterfuge -- is in

accordance with the circuit courts that have addressed this issue. *Fitts*, 236 F.3d at 3-4; *Aramark*,

208 F.3d at 271; *Leonard F.*, 199 F.3d at 105; *Ford*, 145 F.3d at 611.

Therefore, this court finds that the defendant's failure to present an actuarial justification

for its exclusion of ART services is not sufficient evidence to present a question of fact as to

---

[9]*Johnson v. K Mart Corp.*, 281 F.3d 1368 (11th Cir. 2002).

21

whether such exclusion is a subterfuge.  The plaintiff must show that the defendants had an intent to discriminate.  In this case, the plaintiff has failed to present any evidence that the defendant had a specific intent to discriminate and that the plan was a subterfuge.  Therefore, the defendants' motions for summary judgment are due to be granted as to the plaintiff's ADA claims.

The plaintiff does not address the defendants' contention that they are entitled to judgment as a matter of law because the exclusion at issue pre-dated the ADA and, thus, cannot be a subterfuge.  This argument is widely-accepted in the circuit courts that have addressed this issue.  *See Aramark*, 208 F.3d at 271-72; *Leonard F.*, 199 F.3d at 106; *see also K Mart*, 273 F.3d at 1059 ("[I]f K Mart adopted the policy of providing differing long-term disability benefits for mental and physical disabilities prior to the enactment of the ADA, K Mart could not be found to be using § 12201(c) as a subterfuge to evade the purposes of the Act.").  However, because the plaintiff has not addressed this issue and has relied solely on her assertion that failure to present actuarial justification prevents summary judgment in favor of the defendants, the court pretermits any further discussion of whether the existence of a clause predating the enactment of the ADA establish that such clause was not a subterfuge as a matter of law.

## CONCLUSION

Based on the foregoing, the court finds that the defendants' motions to strike the plaintiff's evidentiary submissions (doc. 37, 41) are due to be denied; the plaintiff's motion to strike the affidavit of Kay Headrick (doc. 35) is due to be granted in part and denied in part; and the plaintiff's motions to strike the declaration and supplemental declarations of Martha Ann Turnage (doc. 36, 45, & 50) are due to be denied.  Also, the court finds that the defendants'

motions for summary judgment (doc. 23 & 26) are due to be granted and the plaintiff's claims are due to be dismissed with prejudice. The court finds no disputed issues of material fact and that the defendants are entitled to judgment as a matter of law. An appropriate order will be entered.

     **DONE** this _30th_ day of August, 2002.

<br>

                            **JOHN E. OTT**
                            United States Magistrate Judge

23